UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

SHADEESHA BROWN and
GABRIEL PEREZ,

                  Plaintiffs,

        v.

THE CITY OF NEW YORK, BRIAN McALEAR,
KEITH HOCKADAY, FREDERICO MARTINEZ,
JOAQUIN MORALES, ROBERT DOWNES,
THOMAS ALBANO, GERARD FLOOD,
WILLIAM HART, TIMOTHY MURPHY,
KENYATTA ROUSE, and THOMAS LONGA,

                  Defendants.

11 CV 1068 (AJN)

------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LINKLATERS LLP

Martin S. Bloor
Linda Regis-Hallinan
Thomas G. Haskins, Jr.

1345 Avenue of the Americas
New York, NY  10105
212 903 9000 (Tel)
212 903 9100 (Fax)

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   NO RATIONAL JURY COULD FIND FOR PLAINTIFFS ON THE EVIDENCE IN
     THE RECORD.............................................................................................................. 2

II.  THE DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ............. 5

     A.   The Entry Team Did Not Violate Any Clearly Established Constitutional Rights........ 5

     B.   Defendant Officers are Entitled to Qualified Immunity for the Claims Arising
          Out of the Detention of Plaintiffs ................................................................................. 6

III. THE DEFENDANT OFFICERS HAD PROBABLE CAUSE TO DETAIN
     PLAINTIFFS ............................................................................................................... 7

IV.  EVEN ABSENT QUALIFIED IMMUNITY, PLAINTIFFS HAVE FAILED TO
     ELICIT EVIDENCE FROM WHICH A RATIONAL JURY COULD FIND THE
     COMMISSION OF COMMON LAW TORTS ..................................................................... 9

     A.   Any Force Used Against Plaintiff Perez was Reasonable and Necessary ...................... 9

     B.   Plaintiff Brown has Failed to Produce Evidence to Show That Defendants'
          Alleged Actions Were Sufficiently Outrageous to Sustain Her Claims ......................... 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*5 Borough Pawn, LLC v. City of NY,*
640 F. Supp. 2d 268 (S.D.N.Y. 2009) ........................................................................ 6, 7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ....................................................................................................... 2

*Bancroft v. City of Mount Vernon,*
672 F. Supp. 2d 391 (S.D.N.Y. 2009) .............................................................. 2, 6,7, 9

*Brady v. Town of Colchester,*
863 F.2d 205 (2d Cir. 1988) .......................................................................................... 2

*Carballo v. City of New York,* 10-CV-1885 (SJ) (RML) Memorandum and Order
(E.D.N.Y. June 26, 2012), ECF No. 39 ..................................................................... 7, 8

*DC v. Valley Cent. School Dist.,*
No. 7:09-cv-9036 (WWE), 2011 WL 3480389 (S.D.N.Y. June 29, 2011) .................... 5

*Distiso v. Town of Wolcott,*
352 F. App'x 478 (2d Cir. 2009) ................................................................................... 6

*Gallo v. Prudential Residential Services, L.P.,*
22 F.3d 1219 (2d Cir. 1994) .......................................................................................... 2

*Graham v. Connor,*
490 U.S. 386 (1989) ....................................................................................................... 9

*Hale Propeller, L.L.C. v. Ryan Marine Products Pty., Ltd.,*
151 F. Supp. 2d 183 (D. Con.. 2001) ............................................................................ 3

*Holmes v. Kucynda,*
321 F.3d 1069 (11th Cir. 2003) .................................................................................. 8, 9

*Los Angeles County, CA v. Rettele,*
550 U.S. 609 (2007) ....................................................................................................... 6

*Lynch ex rel. Lynch v. City of Mount Vernon,*
567 F. Supp. 2d 459 (S.D.N.Y. 2008) ...................................................................... 2, 10

*Malley v. Briggs,*
475 U.S. 335 (1986) ....................................................................................................... 7

*Massachusetts v. Upton,*
466 U.S. 727 (1984) ....................................................................................................... 4

*McColley v. County of Rensselaer*,
No. 1:08-cv-01141 (LEK/DRH), 2012 WL 1589022 (N.D.N.Y. May 4, 2012) .............................. 7

*Mitchell v. Giambruno*,
35 A.D.3d 1040 (3d Dep't 2006) .................................................................................................. 10

*People v. Ortiz*,
126 A.D.2d 677 (2d Dep't 1987) .................................................................................................. 8

*Roach v. Stern*,
252 A.D.2d 488 (2d Dep't 1998) .................................................................................................. 10

*Saucier v. Katz*,
533 U.S. 194 (2001) ...................................................................................................................... 7

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998) ...................................................................................................... 3, 9

*U.S. v. Dorsey*,
641 F.2d 1213 (7th Cir. 1981) .................................................................................................... 5

*United States v. Gaskin*,
364 F.3d 438 (2d Cir. 2004) ........................................................................................................ 7

*United States v. Heath*,
455 F.3d 53 (2d Cir. 2006) .......................................................................................................... 8

*Vogeler v. Colbath*,
No. 04 Civ. 6071, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ................................................ 4, 9

*Wende C. v. United Methodist Church*,
776 N.Y.S.2d 390 (N.Y.App. Div. 2004) .................................................................................. 11

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) ...................................................................................................... 7, 8

*Wright v. Smith*,
21 F.3d 496 (2d Cir. 1994) .......................................................................................................... 5

*Young v. Country of Fulton*,
160 F.3d 899 (2d Cir. 1998) ........................................................................................................ 5

## STATUTES

FRCP 50(a) ...................................................................................................................................... 2

28 U.S.C. § 1746 ............................................................................................................................ 3

42 U.S.C. § 1983 ................................................................................................................. 1, 5, 6

Defendants the City of New York (the "City"), Brian McAlear, Keith Hockaday, Joaquin Morales, Robert Downes, Thomas Albano, Gerard Flood, William Hart, Thomas Murphy, Kenyatta Rouse, and Thomas Longa (the "Defendant Officers," together with the City, "Defendants") hereby submit this reply memorandum of law in further support of their motion for summary judgment on the claims asserted by Plaintiffs Shadeesha Brown and Gabriel Perez.[1]

## PRELIMINARY STATEMENT

This action pertains to events surrounding the execution of a search warrant on August 6, 2010 at 1368 Webster Avenue, Apartment 5B, in the Bronx, New York. Plaintiffs have gone to great lengths to point to facts that they believe could plausibly show a violation of their constitutional rights, even going so far as to blatantly contradict (and, incredibly, disclaim) their own complaint, their own sworn testimony, and the submissions they have made to this Court. Indeed, there are few, if any, cites to any evidence in the record for the "facts" they rely on in the "Argument" section of their brief, which, at times, are wholly inconsistent with the facts they set forth in their "Statement of Facts." Plaintiffs are simply attempting to *create* issues of fact – their efforts, however, fall flat. Instead, Plaintiffs have done nothing more than elucidate that their claims have no support in the record. Plaintiffs' efforts are nothing more than an attempt to be financially compensated for being found in an apartment containing drugs, drug paraphernalia, and ammunition, and to hold officers of the NYPD liable for alleged actions that any reasonable officer would have undertaken. Those efforts should fail and this Court should grant Defendants' motion for summary judgment.

---

[1] On July 6, 2010, the Court so ordered the parties' Stipulation and Order of Dismissal for Frederico Martinez and Plaintiffs' Monell claims against the City for violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983 contained in Counts III, IV, IX, and X. (ECF. No. 41.) In light of that, Defendants withdraw those portions of their Motion for Summary Judgment addressed by the stipulation.

## ARGUMENT

As detailed in Defendants' opening brief, in order to withstand a motion for summary judgment, there must exist "sufficient evidence … upon which a reasonable jury could return a verdict for the non-movant." *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 400 (S.D.N.Y. 2009). The Supreme Court has recognized that the "genuine issue" standard is "very close" to the "reasonable jury" directed verdict standard found under FRCP 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (internal citations omitted). The Court must therefore ask whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* While the Court should consider the evidence in the record in the light most favorable to the party opposing the motion, the burden is on the non-moving party to come forward with *persuasive* evidence that their claims are not "implausible." *Brady v. Town of Colchester*, 863, F.2d 205, 212 (2d Cir. 1988) (internal citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (internal citations omitted). For the reasons that follow, and for the reasons set forth in Defendants' opening brief, the Court should grant summary judgment in favor of Defendants.

## I.     NO RATIONAL JURY COULD FIND FOR PLAINTIFFS ON THE EVIDENCE IN THE RECORD

Throughout Plaintiffs' Opposition, Plaintiffs simply make up facts, without any support in the record and without maintaining any consistency.[2] On page two of Plaintiffs' Opposition, for example, Plaintiffs claim that "Defendant Murphy pulled the sheet covering Ms.

---

[2]     Plaintiffs maintain that any inconsistencies are simply issues of credibility, not appropriate for consideration in a summary judgment proceeding. Pls.' Opp. at 8. To the contrary, Defendants point out these blatant inconsistencies to show the Court that Plaintiffs have not marshaled any *plausible* evidence to support their claims, which makes summary judgment for Defendants appropriate. *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 464 (S.D.N.Y. 2008) (granting summary judgment and noting that "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim").

Brown off the bed and directed her, at gunpoint, to stand, to step down from the bed, and to remain standing naked." Pls.' Opp. at 2. On page five, Plaintiffs claim that "Either defendant Downes or defendant Murphy removed the sheet covering Ms. Brown and directed her to stand on the bed and subsequently directed her to stand in the corner." *Id.* at 5. Then on page eleven, Plaintiffs assert that it was both officers who pulled off the bed sheet. *Id.* at 11. The evidence in the record, meanwhile, establishes that Plaintiff Brown was unable to identify anything about the person she claimed pulled the sheet off the bed, beyond an estimate of the individual's height.[3] Bloor Reply. Decl.,[4] Ex. DD at 29 – 32. Plaintiff Brown testified that the individual was five-foot-eleven. *Id.*, Ex. DD at 31: 23 – 32: 4. Defendant Murphy is six-foot-three. *Id.*, Ex. EE at 13: 25 – 14: 2.

      Plaintiffs also now claim that the members of the Emergency Services Unit ("ESU") who allegedly held Plaintiff Brown naked at gunpoint were present at Apartment 5B for the duration of the search. Pls.' Opp. at 7-8. This is not plausible, as the evidence in the record establishes that the same ESU team conducted a search at a separate apartment, in a wholly different precinct, within an hour after entering Apartment 5B. Bloor Reply Decl., Ex. FF; Ex. GG at NYC50. Plaintiffs' claims are simply unsubstantiated speculation which does not create a genuine issue of material fact.[5] *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation.")

      As set forth in Defendants' opening brief, the only facts germane to the claims in this matter are undisputed. Defendant Officers executed a search warrant for Apartment 5B,

---

[3]     If both Plaintiffs' claim that Defendant Murphy pulled the sheet off of Plaintiff Brown's bed, and their claim with respect to Defendant Murphy's role that day are believed, then Defendant Murphy pulled off the incredible feat of holding a three foot by two foot shield with one hand, a handgun with the other, and with the (third?) hand, pulled the sheet off of the bed, all while pointing his firearm at Plaintiff Brown. *See* Pls.' Opp. at 1-5.

[4]     References to "Bloor Reply Decl." are to the Reply Declaration of Martin S. Bloor, dated September 28, 2012, and submitted concurrently herewith.

[5]     Plaintiffs further attempt to support its opposition through the submission of an unsworn declaration of Plaintiff Brown. However, because the unsworn declaration fails to conform to the statutory standards set forth in 28 U.S.C. § 1746, it must be disregarded. *Hale Propeller, L.L.C. v. Ryan Marine Products Pty., Ltd.*, 151 F.Supp.2d 183, 201 (D. Conn.. 2001) (disregarding non-conforming unsworn declaration in summary judgment proceedings).

issued by a magistrate judge, for weapons, drugs and drug paraphernalia.[6]  *See* Bloor Decl.,[7] Ex. A at NYC097.  In the execution of that search warrant, large quantities of drugs, as well as a round of ammunition, were found.  *Id.*, Ex. B at 79-80, 87; Ex. Z at NYC106.  Plaintiffs were found in the apartment, where they had clearly resided, at the very least, the night before.  *Id.*, Ex. B at 86: 23-24; 89: 23-24; 89: 9-12; Ex. C at 70: 3-6, 71: 25, 72: 1-12, 90: 19-25.  The recovered contraband was found in various areas within Apartment 5B, and at least some of the drugs and the .9MM round of ammunition were found in the room occupied by Plaintiffs Perez and Brown. *Id.*, Ex. B at 79-80, 86-88; Ex. C at 85: 1-25, 86: 1-17.  Despite Plaintiffs' arguments to the contrary, the officer's testimony as to this fact is undisputed.  *Id.*  At no point during the search did any of the three occupants claim ownership of the items recovered.  *Id.*, Ex. B at 86: 23-24; 89: 9-12; Ex. C at 70: 3-6, 71: 25, 72: 1-12, 90: 19-25.  The Defendant Officers had reason to believe, before entering the apartment, that they may encounter a dangerous situation, including multiple weapons and a pit bull.  *See* Bellin Decl.,[8] Ex. 2; Bloor Reply Decl., Ex. HH at NYC26.

The undisputed facts establish that, even if (one of) Plaintiffs' version of events is credited, the Defendant Officers acted reasonably in light of the circumstances presented, and are thus entitled to summary judgment on Plaintiffs' claims.  *See Vogeler v. Colbath*, No. 04 Civ. 6071 (LMS), 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005) (noting one must look at conduct in light of the facts and circumstances as presented to the Defendant to the time of Plaintiffs' arrest, and that the analysis turns on whether the officer's conduct was "objectively reasonable" in light of those circumstances) (internal citations omitted).[9]  No rational juror could find otherwise.

---

[6]   Plaintiffs make the unsubstantiated, conclusory, argument that the search warrant was "defective." Pls.' Opp. at 1.  The search warrant was issued by a magistrate judge and is entitled to "great deference."  *See Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984).

[7]   References to "Bloor Decl." are to the Declaration of Martin S. Bloor, dated July 5, 2012, and submitted in connection with Defendants' Motion. ECF No. 39.

[8]   References to the "Bellin Decl." are to the Declaration of Eugene M. Bellin, dated September 7, 2012 and submitted in connection with Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Opp."). ECF No. 45.

[9]   Defendants are further entitled to summary judgment on the basis that Plaintiffs' Notices of Claim filed in connection with this matter are defective in that they fail to name any of the individual Defendant Officers by name, or indeed

## II.    THE DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

### A.    The Entry Team Did Not Violate Any Clearly Established Constitutional Rights

Plaintiffs argue that the Entry Team violated Plaintiff Brown's right to be free of unreasonable searches and seizures by requiring her to remain standing, naked, for (depending on the version of Plaintiff's story used) 40 minutes. Pls.' Opp. at 11-13.   Though the weight of the evidence does not support Plaintiff Brown's claims, even assuming, *arguendo*, that she was made to stand naked for 40 minutes, that would not rise to the level of a violation of a recognized constitutional right. *See* Defs.' Mot. at 23-24.

To show that a particular right is "clearly established," Plaintiffs must point to law binding on this Court. *See Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (noting that to determine "clearly established" rights, the court must look to Supreme Court and Second Circuit precedent and that the question is "not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct). Plaintiffs only support for their argument, however, is by way of citation to case law outside of the Second Circuit, the vast majority of which relates to the constitutionality of *strip searches*, an act of a wholly separate character and gravitas from the claims made by Plaintiffs. *See, e.g., U.S. v. Dorsey*, 641 F.2d 1213, 1217 (7th Cir. 1981) (noting that different standards apply to acts which fall short of the intrusiveness of a strip search). Looking to Supreme Court and Second Circuit precedent, the only applicable case is *Los Angeles County, CA v. Rettele*, which falls short of defining a timeframe within which individuals must be

---

anyone by name at all.  Bloor Decl., Ex. Q at P0010-P0013; *see DC v. Valley Cent. School Dist.*, No. 7:09-cv-9036 (WWE) 2011 WL 3480389, at *2 (S.D.N.Y. June 29, 2011) (granting summary on state law claims "[b]ecause defendants Hooley, Bouldin and Balducci were not named as respondents in the notice of claim, [therefore] plaintiffs cannot assert state law claims against them.")  In addition, Plaintiffs allege in their opposition, for the first time, which specific Defendant Officers allegedly committed each violation.  Accordingly, the Court should grant summary judgment to each Defendant Officer in so far as Plaintiffs' are no longer alleging that that particular Defendant violated Plaintiffs' constitutional right or committed a tort against Plaintiffs.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

allowed to dress. 550 U.S. 609, 615 (2007). Instead, the Court in *Rettele* noted the danger that is present when a residence is known to contain weapons. *Id.* at 614. If (one of) Plaintiffs' versions of events is to be believed, then the Entry Team, which only remains in an apartment as long as is necessary to ensure the safety of the officers (Bloor Reply Decl., Ex. II at 76-78), could reasonably have believed that their conduct was not only necessary for the safety of the officers present, but not violative of any *clearly established* constitutional rights. *See 5 Borough Pawn, LLC v. City of NY*, 640 F.Supp.2d 268, 286 (S.D.N.Y. 2009) (noting that officers are entitled to qualified immunity if "officers of reasonable competence could disagree as to whether their conduct was proper").

The defense of qualified immunity cannot be defeated with the type of generalized constitutional principles Plaintiffs attempt to use here. *See Distiso v. Town of Wolcott*, 352 Fed. App'x 478, 481-482 (2d Cir. 2009) (reversing denial of qualified immunity on equal protection claim because the district court dispensed of the "clearly established" analysis with reference "only to the broad proposition that [plaintiff] was entitled to be free from a racially discriminatory environment," and thereby failed to "address the specific scope and nature of the Defendants' qualified immunity claim"). Here, the Defendant Officers faced a dangerous situation and, assuming (one of) Plaintiffs' version of the facts to be true, acted as a reasonable officer could believe warranted in light of the totality of the circumstances. Summary judgment should therefore be granted in Defendants' favor.

**B.    Defendant Officers are Entitled to Qualified Immunity for the Claims Arising Out of the Detention of Plaintiffs**

As discussed in Defendants' opening brief, the Defendant Officers are further immune from any liability (sounding in §1983 or tort law) based on "official action involving the exercise of discretion even if resulting from negligence or malice." *See Bancroft*, 672 F. Supp. 2d at 408. In *Bancroft*, this Court granted summary judgment in favor of arresting officers on various

6

tort claims, stating that each claim was "barred by the doctrine of governmental immunity." *Id.* Plaintiffs' only response to Defendants' argument on this point is that this Court got *Bancroft* wrong. Pls.' Opp. at 22. To the contrary, *Bancroft* has recently been cited for the very holding that Plaintiffs dispute. *See McColley v. County of Rensselaer*, No. 1:08-cv-01141 (LEK/DRH) 2012 WL 1589022, at *18 (N.D.N.Y. May 4, 2012) (citing *Bancroft* to apply immunity to officers sued for common law false arrest and trespass). Even if the Court were to find that there was no probable cause for the detention (which there was, *see* Section III, *infra*), the Defendant Officers are still entitled to qualified immunity, as "officers of reasonable competence could disagree about the existence of reasonable cause to arrest." *See 5 Borough Pawn*, 640 F.Supp.2d at 289. Qualified immunity "acknowledge[s] that reasonable mistakes can be made as to the legal constrains on particular police conduct," *Saucier v. Katz*, 533 U.S. 194, 205 (2001), and ensures that "all but the plainly incompetent or those who knowingly violate the law" are protected from suit. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## III.    THE DEFENDANT OFFICERS HAD PROBABLE CAUSE TO DETAIN PLAINTIFFS

As set forth in Defendants' Opening Brief, the existence of probable cause is "a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d. 845, 852 (2d Cir. 1996); *see also* Memorandum and Order, *Caraballo v. City of New York*, 10-CV-1885 (SJ) (RML) (E.D.N.Y. June 26, 2012, ECF No. 39). Probable cause exists where an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d. at 852. Generally, courts grant officers broad latitude in determining whether probable cause exists. *See, e.g., United States v. Gaskin*, 364 F.3d 438, 456-57 (2d Cir. 2004).

Where there is evidence to believe that a person actually or constructively possessed contraband, the officer has probable cause to detain or to arrest that individual. *Caraballo* at 5-6. Here, both Defendants Hockaday and Morales testified that drugs were found in the room that was indisputably occupied by Plaintiffs. Bloor Decl., Ex. B at 79-80, 86-88; Ex. C at 85: 1 - 86: 17. Defendant Morales even smelled marijuana coming from that room. *Id.*, Ex. C at 86: 11-17. It was therefore reasonable for the officers to believe that Plaintiffs, who were sleeping in the apartment, were residents of the apartment, and therefore in constructive possession of the drugs. *See Caraballo* at 5.[10] It is immaterial that Plaintiffs did not regularly live in Apartment 5B, because probable cause is "not defeated because a person residing in the apartment at the time of the search did not live there regularly." *Id.* at 6; *see also United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006) (holding that police could reasonably conclude that an apartment's occupants were responsible for the presence of the contraband contained therein; and could arrest them on that basis.)[11]

In arguing that constructive possession did not exist, Plaintiffs cite to a string of cases, all of which are distinguishable from the instant scenario. Indeed, much of Plaintiffs' support relies on *criminal* findings of constructive possession, which require possession to be shown beyond a reasonable doubt, a far greater standard than the showing required for probable cause. *Compare People v. Ortiz*, 126 A.D.2d 677, 678 (2d Dep't 1987) (noting reasonable doubt standard for criminal conviction) *with Weyant*, 101 F.3d. at 852 (noting "reasonable belief" standard). Plaintiffs also cite to an Eleventh Circuit decision, *Holmes v. Kucynda*, distinguishable from the present situation because there were multiple indices that the plaintiff in *Holmes* was

---

[10] Plaintiffs' attempt to discredit the holding in *Caraballo* by (1) insinuating that Judge Johnson is a biased party as a result of his former position with the City of New York and (2) arguing that Judge Johnson misread the holding in *United States v. Heath*, 455 F.3d 53, 57 (2d Cir. 2006). Plaintiffs' argument is without merit, and ignores that Judge Johnson did not rely solely on the holding in *Heath*.

[11] Plaintiffs further allege that they were "imprisoned" at the PSA 7 precinct for four hours. Pls.' Opp. at 14. However, Plaintiffs offer no argument to rebut Defendants' well supported position that such a detention is well within the constitutional, and New York state, limit for pre-arraignment detention. *See* Defs.' Mot. at 20, fn. 13.

only a visitor (including travel bags and out of state identification), and no indices that she had any idea about the recovered contraband. 321 F.3d 1069, 1081 (11th Cir. 2003). It is undisputed that Plaintiff Brown never indicated that she was simply an overnight guest, and indeed Plaintiff Perez testified that he often stayed at Apartment 5B. (Bloor Decl., Ex. K at 26-30). Combined with the drugs found in the room occupied by Plaintiffs, and the marijuana smell emanating from Plaintiffs' room, it was at least "arguably reasonable to conclude" that Plaintiffs exerted constructive possession over the discovered items. *Holmes*, 321 F.3d at 1080. And while Plaintiffs claim that no drugs were found in the bedroom occupied by Plaintiffs, they cite to *no evidence* to support that baseless, conclusory argument, which is directly contradicted by the testimony of Defendants Hockaday and Morales. *See Scotto*, 143 F.3d at 114.

## IV. EVEN ABSENT QUALIFIED IMMUNITY, PLAINTIFFS HAVE FAILED TO ELICIT EVIDENCE FROM WHICH A RATIONAL JURY COULD FIND THE COMMISSION OF COMMON LAW TORTS

### A. Any Force Used Against Plaintiff Perez was Reasonable and Necessary

Plaintiff Perez argues that Defendant Downes used "excessive force" in the course of handcuffing him. Pls.' Opp. at 24-25. However, as detailed in Defendants' opening brief, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations omitted). Rather, the totality of the circumstances must be considered. *See Vogeler* 2005 WL 2482549 at *9. In fact, courts have held that some amount of force is reasonable. *See Bancroft* 672 F. Supp. 2d at 405-06.

Plaintiff Perez does not claim that he suffered any harm as a result of a knee being put against his back. Bloor Decl., Ex. K at 79: 4-17. In their Opposition, Plaintiffs do not even attempt to rebut Defendants' argument with respect to Plaintiff Perez, instead making only conclusory statements that Plaintiff Perez is entitled to compensation because he was subdued and handcuffed-- without *any* claimed injury. This is insufficient and summary judgment should be

granted for the Defendant Officers. *See Lynch ex rel. Lynch*, 567 F. Supp. 2d at 468 (granting summary judgment because "the fact that the tight handcuffing did not cause [plaintiff] any continuing injury is fatal to the excessive force claim").

**B.      Plaintiff Brown has Failed to Produce Evidence to Show That Defendants' Alleged Actions Were Sufficiently Outrageous to Sustain Her Claims**

Plaintiff Brown cites two cases in support of her claim that Defendants' conduct, if (one of) her versions is to be believed, "constituted outrageous conduct which violated community notions of decency" and established the necessary elements of intentional infliction of emotional distress. Pls.' Opp. at 24. Neither supports this argument. Indeed, in *Roach v. Stern*, the Second Department noted that "[t]he element of outrageous conduct is '"rigorous, and difficult to satisfy"'" and a court could determine "as a matter of law [] that the alleged behavior is not sufficiently outrageous to warrant the imposition of liability." 252 A.D.2d 488, 491 (2d Dep't 1998).[12] In light of the highly dangerous, potentially volatile situation the Defendant Officers were in, their (alleged) behavior was entirely reasonable and Plaintiff Brown's allegations do not meet the high threshold required to sustain her claim.[13] Accordingly, the Court should grant Defendants' Motion for Summary Judgment.

## CONCLUSION

For the reasons stated herein, and in Defendants' opening brief, Defendants respectfully request Summary Judgment be granted in their favor with respect to all remaining Counts alleged in the Complaint.

---

[12]     In *Mitchell v. Giambruno*, Plaintiffs' second case, in finding that the Plaintiff had adduced sufficient evidence to show they had suffered severe emotional distress, the Third Department specifically noted that plaintiffs' medical caregivers had evaluated plaintiffs before and after the alleged tortious conduct and noted an *increase* in the plaintiffs' levels of anxiety from before that conduct allegedly began. 35 A.D.3d 1040, 1042 (3d Dep't 2006). Dr. Marcia Knight testified that not only had she never evaluated Plaintiff Brown prior to August 6, 2010, but that she did little to nothing to ascertain Plaintiff Brown's state of mind prior to that date (an infirmity at least one court had found in Dr. Knight's work previously).[12] Bloor Decl., Ex. JJ at 41: 5 – 43: 13, 128, 134: 13 – 135: 8, 143: 6 – 25.

[13]     Because Plaintiffs have failed to provide sufficient evidence of the underlying torts, *respondeat superior* is inapplicable here. *See Wende C. v. United Methodist Church*, 6 A.D.3d 1047, 1052 (4th Dep't 2004).

Dated:      New York, New York
            September 28, 2012

                                        Respectfully submitted,

                                        Linklaters LLP

                                        By:    /s/ Martin S. Bloor
                                               Martin S. Bloor
                                               Linda Regis-Hallinan
                                               Thomas G. Haskins, Jr.

                                        1345 Avenue of the Americas
                                        New York, NY 10105
                                        (212) 903-9000
                                        (212) 903-9100 (fax)

                                        *Attorneys for Defendants*