USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 8 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SHADEESHA BROWN, ET AL.,

                Plaintiffs,

-v-

THE CITY OF NEW YORK, ET AL.,

                Defendants.
-------------------------------------------------------------- X

11 Civ. 1068 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs Shadeesha Brown and Gabriel Perez bring this action alleging various constitutional injuries in violation of 42 U.S.C. § 1983 as well as various state law torts. (Dkt. # 10) In essence, they allege that they were overnight guests in an apartment in the Bronx when the defendant police officers entered the apartment and executed a search warrant. Plaintiffs claim that they were detained for the duration of the search, during which time Ms. Brown was nude and was not permitted to dress, and were then transported to the police precinct where they were detained for another four hours before being released without charges. Plaintiffs contend that these actions not only violated their rights under the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, but also constitute state law torts of assault and battery, false imprisonment, and intentional infliction of emotional distress.

    Before the Court is Defendants' motion for summary judgment on each of these claims. (Dkt. # 37) The parties have since stipulated to dismissal of all claims alleged against Frederico Martinez and dismissal of all § 1983 claims asserted against the City of New York. (Dkt. # 41) Otherwise, Plaintiffs oppose Defendants' motion. (Dkt. # 48) For the reasons that follow,

1

Defendants' motion is GRANTED in part and DENIED in part.

## I.   LEGAL STANDARD

Summary judgment is properly granted when, after reviewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). For summary judgment purposes, a genuine issue exists if the evidence is such that a reasonable jury could decide in the non-moving party's favor. *Id.*

In a summary judgment setting, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citations omitted).

## II.   FACTS

Unless otherwise noted, the following facts are undisputed or taken in the light most favorable to Plaintiff.[1]

---

[1] To the extent that Plaintiff has not disputed a particular fact in Defendant's 56.1 Statement or has offered no admissible evidence to refute that fact, that fact is deemed admitted. *See Giannullo v. City of New York*, 322 F.3d

2

On August 6, 2010, various officers of the New York City Police Department executed a search warrant for weapons, drugs and drug paraphernalia at Apartment 5B of 1368 Webster Avenue in the Bronx, New York. (Def. 56.1 ¶¶ 2-3) At the time of the search, Karen Rodriguez and Plaintiffs, Mr. Perez and Ms. Brown, were in the apartment. (Def. 56.1 ¶ 8) Mr. Perez and Ms. Brown were not residents of the apartment – they were overnight guests of Ms. Rodriguez. (P. 56.1 ¶ 4)

The apartment has three bedrooms. (Pl. 56.1 ¶ 5) Mr. Perez and Ms. Brown were asleep in the second or middle bedroom when officers entered the apartment. (Pl. 56.1 ¶ 6)

Mr. Perez alleges that he heard a bang caused by the officers entering the apartment and reached to put on a pair of shorts. (Perez Depo. 39:23 – 40:16) Officers entered the bedroom, forced him to the ground by placing a knee in his back, and handcuffed him. (Perez Depo. 40:24 – 41:6)

Ms. Brown alleges that she was awoken by five or six officers entering the bedroom that she was sharing with Mr. Perez. (Brown Depo. 27:9-14, 28:4-16, 29:2-4) One of the officers pulled the bed sheet off of her and instructed her to step out of the bed and walk to the corner of the room. (Brown Depo. 29:12-16; 34:2-4) Ms. Brown asked whether she could put on her clothes but the officer said no, stating that she had to be checked. (Brown Depo. 34:8-13) While Ms. Brown was standing in the corner, she was not permitted to cover herself or to dress. (Brown Depo. 35:13 – 36:8) After approximately 45 minutes, Ms. Brown was permitted to sit down. (Brown Depo. 36:22-23) An officer covered her with a shirt and a bed sheet. (Brown Depo. 20:7-9) About five minutes later, a female officer entered the room and allowed Ms. Brown to dress. (Brown Depo 42:9-22)

---

139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

The search of the three-bedroom apartment uncovered nineteen bags of crack cocaine, fifty-nine glassine envelopes of heroin, forty-two bags of marijuana and one .9 millimeter round of ammunition. (Def. 56.1 ¶ 16) Following the search, Ms. Rodriguez, Mr. Perez and Ms. Brown were taken to the police precinct. (Def. 56.1 ¶ 17) Plaintiffs were subsequently released without being charged with any violation. (Def. 56.1 ¶ 19)

## III. DISCUSSION

As Plaintiffs clarify in their opposition to Defendants' motion for summary judgment, their claims under 42 U.S.C. § 1983 are based on (1) the alleged detention of Ms. Brown at the apartment for forty minutes, during which time she was allegedly nude and not permitted to dress, and (2) the transportation of Ms. Brown and Mr. Perez to the police precinct where they were allegedly held for four hours before being released. (Opp. 9) Plaintiffs' state law claims include intentional infliction of emotional distress based on Ms. Brown's alleged detention in the nude, assault and battery based on the alleged treatment of Mr. Perez when he was handcuffed at the apartment, and false imprisonment based on the alleged four hour detention of Plaintiffs at the police precinct. (*Id.*) Defendants move for summary judgment on each of these claims.

### A. Plaintiffs' Claims Pursuant to 42 U.S.C. § 1983

#### 1. Personal Involvement Requirement

Before turning in detail to Plaintiffs' § 1983 claims, the Court addresses Defendants' contention that summary judgment is warranted with respect to the individual officers to the extent that any one of them was not personally involved in the alleged conduct underlying these claims. (Mot. 16 n. 12; Reply 4 n. 9) Section 1983 liability is limited to those individuals who were personally involved in the constitutional violation. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in

4

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Thus, to the extent that a defendant officer was not personally involved either in detaining Ms. Brown without allowing her to dress or in transporting Plaintiffs to the police precinct and detaining them for several hours, summary judgment should be granted in that officer's favor. *See De Michele v. City of New York*, No. 09 Civ. 9334, 2012 WL 4354763, at *16 (S.D.N.Y. Sept. 24, 2012) ("To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation.") (quoting *Ricks v. O'Hanlon*, No. 07 Civ. 9849, 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010)).

### a) Ms. Brown's Detention in the Nude

Turning first to Ms. Brown's § 1983 claim related to her detention in the nude, the Court finds that summary judgment in favor of Officer Longa is warranted because Ms. Brown has adduced *no evidence* that Officer Longa was personally involved in detaining her without allowing her to dress.

Moreover, Officer Longa testified that at the time of the search, he was assigned to "Rear Security," meaning that he was responsible for securing the door to the apartment and allowing only authorized individuals to enter and exit the apartment. (Longa Depo. 44:21 – 45:16) He further stated that, as a general matter, when he is assigned to "Rear Security" he only enters an apartment a few feet past the apartment door. (Longa Depo. 46:6 – 47:18) During this time, he is armed with an M4 assault rifle. (Longa Depo. 44:2-25) The only time that he would leave his position at the door is if a crisis arose requiring rifle fire or some sort of additional heavy weapons involvement. (Longa Depo. 47:2 – 49:2) Such a crisis would be recorded. (Longa Depo. 49:3-8) However, no such crisis was recorded with respect to the search at issue in the instant action. (Longa Depo. 49:9 – 50:4) Officer Longa's testimony therefore indicates that, in

all likelihood, he only ever entered the apartment by a few feet and did not enter the bedroom where Ms. Brown was found and then allegedly detained. Ms. Brown has offered nothing to refute Officer Longa's testimony.

In light of the fact that Ms. Brown has failed to present any evidence either that Officer Longa deviated from his usual practice of maintaining a position at the front door of the apartment or that he was otherwise personally involved in detaining her without allowing her to dress, summary judgment is granted in Officer Longa's favor on this claim.

### b) Plaintiffs' Transport to and Detention at the Police Precinct

Turning next to Plaintiffs' §1983 claims arising out of their transportation to the police precinct and subsequent detention, only Officer Hockaday and Sergeant Morales are alleged to have had personal involvement in these actions. (Opp. 7) Officer Hockaday admits to transporting Plaintiffs to the precinct and placing them in a holding cell. (Hockaday Depo. 77:20-23) He further testified that a supervisor directed him to take Plaintiffs to the precinct. (Hockaday Depo. 77:3-19) Although Officer Hockaday does not remember precisely who directed him to take Plaintiffs to the precinct, he stated that there are only two potential supervisors who could have given him this order: Lieutenant Martinez and Sergeant Morales. (Hockaday Depo. 77:8-12) Given that all parties agree that Lieutenant Martinez did not participate in the matter at issue because he was on vacation on August 6, 2010, (Def. 56.1 ¶ 54), it appears that Sergeant Morales gave Officer Hockaday the order. Plaintiffs have adduced no evidence regarding the personal involvement of any other officers in Plaintiffs' transportation to, or detention at, the precinct. As a result, summary judgment is granted on this claim with respect to officers McAlear, Downes, Albano, Flood, Hart, Murphy, Rouse and Longa.

### 2. Constitutional Bases For Plaintiffs' § 1983 Claims

Having identified with greater particularity those defendants who are potentially subject to liability on Plaintiffs' § 1983 claims, the Court turns to two additional prefatory matters. First, Ms. Brown alleges that she was detained in the nude in violation of her Fourth, Ninth and Fourteenth Amendment rights. (Am. Cmplt. ¶ 65) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. The Ninth Amendment is not an independent source of constitutional rights, *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007), and therefore cannot serve as the basis for a § 1983 claim, *Subgidio v. Graiani*, No. 05 Civ. 4065, 2006 WL 648229, at *7 (S.D.N.Y. Mar. 16, 2006). As a result, to the extent that Ms. Brown's § 1983 claims are premised on violations of the Ninth Amendment, they are dismissed.

Second, Plaintiffs allege that they were arrested and detained in violation of their Fourth, Fifth, and Fourteenth Amendment Rights. (Am. Cmplt. ¶¶ 62, 103) The Fifth Amendment regulates due process violations by federal, not state or municipal, actors. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Because Plaintiffs allege due process violations by municipal actors (*i.e.*, New York City Police Officers), the Fourteenth Amendment, rather than the Fifth Amendment, applies to these claims. *Id.* Thus, to the extent that Plaintiffs have raised due process claims under the Fifth Amendment, these claims are dismissed.

*   *   *

With these introductory matters settled, the Court turns to the specifics of Plaintiffs' § 1983 claims. Defendants move for summary judgment on Ms. Brown's claim that she was unconstitutionally detained without being allowed to dress and on Plaintiffs' claim that they were

unconstitutionally transported to and detained at the police precinct. For the reasons that follow, summary judgment is DENIED with respect to both claims.

### 3. Ms. Brown's § 1983 Claim Arising Out of Her Alleged Detention In the Nude

Ms. Brown alleges that her Fourth and Fourteenth Amendment rights were violated when she was detained, in the nude, for at least forty minutes. Defendants move for summary judgment on this claim contending that they are entitled to qualified immunity. (Mot. 23; Reply 5-6)

Qualified immunity provides government officials "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Government officials who are performing discretionary functions, including police officers, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001).

In assessing qualified immunity for police officers, the Second Circuit has described the appropriate analysis as having two prongs:

> A police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.

*Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted). The second prong – whether it was objectively reasonable for the officer to believe that the challenged act was lawful – is sometimes incorporated into the Second Circuit's definition of a clearly established right. *See Looney v. Black*, No. 11–3486, 2012 WL 6633949, at *4 (2d Cir. Dec. 21, 2012) ("A right is clearly established if the law (1) was defined with reasonable clarity,

(2) has been affirmed by the Supreme Court or the Second Circuit, and (3) *where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law*.") (emphasis added). Ultimately, it matters not whether the Court assesses the objective reasonableness of the officers' conduct as part of, or separately from, the clearly established right inquiry, so long as this assessment is made.

As detailed below, the Court concludes that Ms. Brown had a clearly established right not to be detained in the nude for longer than necessary to achieve valid law enforcement purposes. The Court further finds that, viewing the evidence in the light most favorable to Ms. Brown, the record is insufficient to conclude either that Ms. Brown's detention was constitutional or that it was objectively reasonable for an officer to believe that Ms. Brown's detention was constitutional.

In reaching the conclusion that Ms. Brown had a clearly established right not to be detained in the nude for longer than necessary to achieve valid law enforcement purposes, the Court relies on three Supreme Court cases: *Michigan v. Summers*, 452 U.S. 692 (1981), *Muehler v. Mena*, 544 U.S. 93 (2005), and *Los Angeles County, California v. Rettele*, 550 U.S. 609 (2007), each of which predates the detention at issue in the instant action. Through these cases, the Supreme Court has clearly established that when police officers execute a valid search warrant at a residence, they may detain the occupants of the residence without a warrant so long as the detention – in particular, the nature of the intrusion caused by the circumstances of the detention – is reasonable in light of valid law enforcement purposes.

The cornerstone of this standard is *Summers*, wherein the Supreme Court first addressed the permissibility of detaining the occupants of a residence without a warrant during the course of a valid search of the residence. Noting "the general rule that every arrest, and every seizure

9

having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause," the Supreme Court also acknowledged that there are "exception[s] for limited intrusions that may be justified by special law enforcement interests," which exceptions are guided by "the ultimate standard of reasonableness embodied in the Fourth Amendment." 452 U.S. at 699-700.

The Supreme Court concluded that determination of whether this warrantless detention violated the Fourth Amendment required weighing the character of the intrusion against its justification. *Id.* at 700-01. Finding the intrusion posed by the detention limited in nature, the Supreme Court identified three law enforcement interests served by the detention: (1) "preventing flight in the event that incriminating evidence is found," (2) "minimizing the risk of harm to the officers," and (3) facilitating "the orderly completion of the search." *Id.* at 702-05. Based on balancing these justifications against the limited nature of the intrusion, the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705.

In *Muehler*, the Supreme Court confirmed the balancing test articulated in *Summers*, employing it to assess whether, in the course of searching a residence pursuant to a valid warrant, the occupants may be detained in handcuffs. 544 U.S. at 99-101. The Supreme Court concluded that "[t]he officers' use of force in the form of handcuffs to effectuate [the plaintiff's] detention in the garage, as well as the detention of the three other occupants, was reasonable because the governmental interests outweigh the marginal intrusion." *Id.* at 99. *Muehler* therefore confirms that the reasonableness of a detention effectuated during the course of a search pursuant to a valid warrant is evaluated by balancing the magnitude of the intrusion against the governmental

interests served by the intrusion.

Finally, in *Rettele*, the Supreme Court applied the balancing test articulated in *Summers* to assess whether it was permissible, in the course of executing a valid search warrant, to require the occupants of a residence to stand in the nude for only slightly more than two minutes. The Supreme Court held that this brief detention was not unreasonable in light of the need "to secure the room and ensure that other persons . . . did not present a danger." 550 U.S. at 615. The Supreme Court emphasized that the reasonableness of the detention was premised on the fact that it only lasted for the time necessary to achieve these valid law enforcement purposes:

> This is not to say, of course, that the deputies were free to force [the plaintiffs] to remain motionless and standing for any longer than necessary. We have recognized that special circumstances, or possibly a prolonged detention, might render a search unreasonable. There is no accusation that the detention here was prolonged . . . . And there is no allegation that the deputies prevented [the plaintiffs] from dressing longer than necessary to protect their safety.

*Id.* In this way, *Rettele* confirms the balancing test articulated by the Supreme Court in *Summers*, as well as the rule that flows from this test: law enforcement officers may detain the occupant of a residence in the course of effectuating a valid search of the residence, but the nature of the detention, particularly its intrusiveness, must be no greater than necessary to achieve valid law enforcement purposes.

In light of *Summers*, *Muehler*, and *Rettele*, the Court finds that Ms. Brown had a clearly established right not to be detained in the nude for longer than necessary to achieve valid law enforcement purposes. Viewing the facts in the light most favorable to Ms. Brown, as the Court is required to do on summary judgment, a jury could find that her detention was unreasonable. According to Ms. Brown, she was forced to remain standing and undressed for approximately 40 minutes, during which time her numerous requests to cover herself were denied. (Brown Depo. 35:13 – 36:4) Ms. Brown also claims that for at least part of the detention her arms were

11

handcuffed behind her so that she could not cover herself. (Brown Depo. 36:5-21) While Defendants have generally argued that Ms. Brown's detention was necessary to ensure the safety of the officers, they have not articulated why the officers' safety, or any other valid law enforcement objective, required such prolonged forced nakedness.

This does not fully resolve the qualified immunity question because, as the Court has indicated, a police officer is entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87. This aspect of the qualified immunity analysis is satisfied "if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks omitted).

To the extent that Defendants contend they are entitled to qualified immunity because a reasonable officer could have believed that it was necessary, due to concerns about officer safety, to detain Ms. Brown in the nude for forty minutes, the Court finds the present evidentiary record insufficient to justify this conclusion. For example, nothing in the record, including nothing in testimony by Defendants, indicates how long it took officers to secure Ms. Brown, Mr. Perez, and Ms. Rodriguez; how long it took to sweep the apartment for weapons or for other persons; or whether covering Ms. Brown at an earlier point in her detention could have presented a security risk. In other words, the Court does not know if the decision to detain Ms. Brown in the nude for forty minutes was a close call for the officers or was so far in excess of what was necessary that no reasonable officer could have believed the detention to be lawful.

In light of the forgoing, Defendants' motion for summary judgment on this claim is DENIED.

### 4. Plaintiffs' § 1983 Claims Arising Out of Their Alleged Arrest and Detention At the Police Precinct

Officer Hockaday and Sergeant Morales also move for summary judgment on Plaintiffs' claims that their rights under the Fourth and Fourteenth Amendments were violated when they were arrested, transported to the police precinct and detained for approximately four hours. (Mot. 18-20; Reply 7-9) Defendants argue that they are entitled to qualified immunity on these claims as well because there was probable cause – or at least arguable probable cause – to arrest and detain Plaintiffs for constructive possession of narcotics found in the apartment. (*Id.*)

Probable cause is an absolute defense to a § 1983 claim of false arrest or false imprisonment. *Kilburn v. Vill. of Saranac Lake*, 413 Fed.Appx. 362, 363 (2d Cir. Mar. 09, 2011). An arrest is supported by probable cause "when the officers have knowledge of or reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id.* (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). However, Defendants need not establish probable cause in order to merit a grant of qualified immunity. Rather, a police officer is entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87. That is, he is entitled to qualified immunity if "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

In determining whether "officers of reasonable competence could disagree on whether the probable cause test was met," *i.e.*, whether there was arguable probable cause, the Court is guided by the Second Circuit's recent decision in *Benn v. Kissane*, No. 11–5184, 2013 WL 362974 (2d Cir. Jan. 31, 2013):

> "[A] court considering a summary judgment motion in a false-arrest . . . case must construe in favor of the non-moving party any factual disputes regarding what circumstances were known to the officer at the relevant time. After that, however, the court must undertake a neutral, legal analysis of whether those (assumed) circumstances

13

>satisfy the probable-cause standard. In other words, the court should resolve in favor of the non-moving party any disputes about what information the officer knew, but it should neutrally determine whether that information gave rise to probable cause. An objectively reasonable police officer applying the probable-cause standard would not automatically or necessarily construe all available information in favor of a particular individual, and neither should the court."

2013 WL 362974, at *3. Thus, the question before the Court is whether, based on the undisputed facts, a reasonable officer could have believed that there was probable cause to arrest and detain Plaintiffs for constructive possession of narcotics found in the bedroom in which Plaintiffs were sleeping. The Court finds that, based on the undisputed evidence, a reasonable officer could reach this conclusion.

Constructive possession exists when a person has the power and intention to exercise dominion and control over contraband. *See United States v. Snow*, 462 F.3d 55, 69 (2d Cir. 2006). The parties agree that, among other things, forty-two baggies of marijuana were found in the apartment. (Def. 56.1 ¶ 16) According to both Officer Hockaday and Sergeant Morales, their records indicate that this contraband was found in the second or middle bedroom. (Hockaday Depo. 87:5-19; Morales Depo. 85:23 – 86:10) Officer Hockaday and Sergeant Morales both testified that this was the room in which Mr. Perez had been staying. (Hockaday Depo. 88:7-9; Morales Depo. 86:2-10) And both Plaintiffs admit to having been asleep in the second or middle bedroom at the time that the officers entered the apartment to execute the search warrant. (Perez Depo. 37:22-24, 38:20 – 39:3, 39:23 – 41:6; Brown Depo. 27:9 – 28:25) Based on these facts, reasonable officers could *at least* disagree as to whether or not there was probable cause to believe that Plaintiffs exercised dominion and control over these narcotics. Consequently, there was, at a minimum, arguable probable cause to arrest and detain them, and Defendants' motion for summary judgment on this claim is GRANTED.

### B. Plaintiffs' State Law Claims

Having addressed Plaintiffs' federal claims, the Court turns to Plaintiffs' claims under New York state law. Plaintiffs allege three state law claims: (1) intentional infliction of emotional distress based on Ms. Brown's alleged detention in the nude; (2) assault and battery based on the alleged treatment of Mr. Perez when he was handcuffed at the apartment; and (3) false imprisonment based on the alleged arrest and detention of Plaintiffs at the police precinct. (Opp. 9) Defendants move for summary judgment on each of these claims.

Before turning to Defendants' arguments with respect to each particular claim, the Court addresses Defendants' general contention that they cannot be held liable for any state law tort claims because of "New York state governmental immunity." (Mot. 15; Reply 6-7) "New York law does grant government officials qualified immunity on state law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006). Thus, unless there exist genuine issues of material fact regarding the reasonableness of Defendants' actions, Defendants are entitled to summary judgment on Plaintiffs' state law claims.

### 1. Ms. Brown's Claim of Intentional Infliction of Emotional Distress

Ms. Brown's state law claim of intentional infliction of emotional distress arises out of her alleged prolonged detention in the nude. Defendants move for summary judgment on this claim on the grounds that their conduct was reasonable and not extreme or outrageous as required to maintain such a claim. (Mot. 21; Reply 10) However, as the Court has already indicated *supra* § III.A.3, factual disputes persist regarding the reasonableness of Ms. Brown's nude detention. As a result, Defendants' motion for summary judgment on this claim is DENIED. *See McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999) (where questions of fact remained regarding the reasonableness of the plaintiff's detention, summary judgment was not

warranted on the plaintiff's claim for intentional infliction of emotional distress).

### 2. Mr. Perez's Claim of Assault and Battery

Mr. Perez's claim for assault and battery, which he also refers to as a claim for excessive force, is based on an officer allegedly forcing Mr. Perez to the floor, placing a knee in Mr. Perez's back, and handcuffing him. (Opp. 24-25) Defendants move for summary judgment contending that such conduct, if it did occur, was reasonable. (Mot. 21-22; Reply 9-10)

Assault and battery claims, when alleged against a police officer, are evaluated like excessive force claims. *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 590 (2d Dep't 2011). Application of physical force is excessive when it is more than is necessary under the circumstances. *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is excessive. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations omitted). For the reasons that follow, the Court concludes that no reasonable jury could find that Mr. Perez was subjected to excessive force.

It is indisputable that police officers may, during the course of searching a residence, detain the occupants of the residence using handcuffs. *Muehler*, 544 U.S. at 99-101. Furthermore, the record demonstrates that officers entered the apartment expecting to find weapons. (Bloor Decl. Ex. A) As a result, it was not unreasonable for them to secure all persons in the apartment. Finally, although Mr. Perez alleges that he was pushed to the floor and that a knee was placed in his back, he does not allege that he suffered *any* injury – not even a *de minimus* injury – as the result of this conduct, (Perez Depo. 41:2-6, 79:4-17). *See, e.g., Washington-Herrera v. Town of Greenburgh*, 956 N.Y.S.2d 487, 490-91 (2d Dep't 2012) (summary judgment warranted on excessive force claim where alleged conduct did not result in

any injury to the plaintiff). Because no reasonable jury could, based on this evidence, conclude that Mr. Perez was subjected to excessive force, Defendants' motion for summary judgment on this claim is GRANTED.

### 3. Plaintiffs' Claim for False Imprisonment

Finally, the Court turns to Plaintiffs' claims for false imprisonment arising out of their alleged arrest and detention at the police precinct. For the same reasons discussed *supra* § III.A.4, Defendants' motion for summary judgment on Plaintiffs' false imprisonment claims is GRANTED.

## IV. CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' §1983 and state law claims for false arrest and false imprisonment and with respect to Mr. Perez's state law claim for excessive force. It is further GRANTED with respect to Ms. Brown's remaining claims to the extent they are alleged against Officer Longa. It is otherwise DENIED.

Counsel for all parties are directed to appear for a scheduling conference before the Court on February 15, 2013 at 10:30 AM in Courtroom 519 of the United States District Courthouse for the Southern District of New York, 40 Foley Square, New York, New York. Prior to the conference, counsel shall confer regarding possible trial dates for this matter.

SO ORDERED.

Dated: February 8, 2013
New York, New York

ALISON J. NATHAN
United States District Judge