IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHADEESHA BROWN, *et al.*, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 11 Civ. 1068 (AJN) |
| | : | |
| THE CITY OF NEW YORK, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE
THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS DR. MARCIA KNIGHT**

PEPPER HAMILTON LLP

Lawrence Byrne
Martin S. Bloor
Linda Regis-Hallinan
Chris Howard

The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY  10018-1405
212.808.2700 (Tel)
212.808.2738 (Fax)

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITES ................................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT ..................................................................................................................................... 1

I.    PLAINTIFF BEARS THE BURDEN OF ESTABLISHING THAT DR. KNIGHT'S TESTIMONY IS ADMISSIBLE ................................................................... 2

II.    DR. KNIGHT'S DIAGNOSIS OF PTSD IS NOT RELIABLE BECAUSE SHE FAILED TO VERIFY BROWN'S SELF-REPORTED SYMPTOMS .............................. 3

III.    THE CAUSATION OPINIONS ARE UNRELIABLE BECAUSE DR. KNIGHT DID NOT FULFILL HER DUTY TO ACCOUNT FOR LIKELY ALTERNATIVE EXPLANATIONS FOR BROWN'S ALLEGED INJURIES ............... 6

IV.    PLAINTIFF RELIES ON INAPPOSITE AND NON-BINDING CASES ........................ 8

CONCLUSION ............................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                               **PAGE(S)**

*Bowers v. NCAA*,
    564 F. Supp. 2d 322 (D.N.J. 2008) ....................................................................................... 7

*Brooks v. Outboard Marine Corp.*,
    234 F.3d 89 (2d Cir. 2000) .................................................................................................... 2

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) .................................................................................................... 1, 2, 8

*Gastineau v. UMLIC VP LLC*,
    No. 04-cv-0633 (LJM) (WTL), 2008 U.S. Dist. LEXIS 47173 (S.D. Ind. June 17,
    2008) ...................................................................................................................................... 3

*Kador v. City of New Rds.*,
    No. 07-682, 2011 U.S. Dist. LEXIS 118110 (M.D. La. Oct. 13, 2011) ................................ 3

*Kudabeck v. Kroger Co.*,
    338 F.3d 856 (8th Cir. 2003) ............................................................................................... 10

*Lassiegne v. Taco Bell Corp.*,
    202 F. Supp. 2d 512 (E.D. La. 2002) .................................................................................... 3

*Lee Valley Tools, Ltd. v. Indus. Blade Co.*,
    No. 10-cv-6242 (CJS), 2013 U.S. Dist. LEXIS 12178 (W.D.N.Y. Jan. 29, 2013) ................ 5

*Lopez v. City of Houston*,
    No. 03-cv-2297, 2006 U.S. Dist. LEXIS 38856 (S.D. Tex. June 12, 2006) ..................... 8, 9

*Redmond v. City of E. Point*,
    No. 00-cv-2492 (WEJ), 2004 U.S. Dist. LEXIS 31631 (N.D. Ga. Mar. 26, 2004) ............. 10

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
    No. 98-cv-8272 (RPP), 2003 U.S. Dist. LEXIS 15976 (S.D.N.Y. Sept. 15, 2003) ............... 3

*Schaefer-Condulmari v. US Airways Group*,
    LLC, No. 09-cv-1146, 2012 U.S. Dist. LEXIS 99666 (E.D. Pa. July 17, 2012) ................. 10

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*,
    No. 95-cv-8136 (RCC), 2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. Dec. 13, 2001) .............. 3

*Trafton v. Sunbury Primary Care, P.A.*,
    689 F. Supp. 2d 198 (D. Me. 2010) ...................................................................................... 9

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
     313 F. Supp. 2d 213 (S.D.N.Y. 2004) ..................................................................................6

*United States v. Williams*,
     506 F.3d 151 (2d Cir. 2007) ................................................................................................2

*Viterbo v. Dow Chem. Co.*,
     826 F.2d 420 (5th Cir. 1987) ...............................................................................................7

*Zwillinger v. Garfield Slope Housing*,
     No. 94-cv-4099 (SMG), 1998 U.S. Dist. LEXIS 21107 (E.D.N.Y. Aug. 17, 1998) .................6

**STATUTES AND RULES**

Fed. R. Evid. 702 ...............................................................................................................1, 2, 7

**OTHER AUTHORITIES**

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 467 (4th
     ed. 2000) .............................................................................................................................6

Defendants submit this reply in further support of their motion to exclude the testimony of Marcia Knight, Ph.D., pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence.

### **PRELIMINARY STATEMENT**

Plaintiff Shadeesha Brown attempts to introduce the testimony of an expert witness whose diagnostic opinions are based on a "the patient said it, I believed it, and that's the end of it" approach that fails to satisfy the reliability required by Rule 702. Dr. Knight diagnosed Brown with posttraumatic stress disorder ("PTSD") based solely on the information provided by Brown, even though case law, the American Psychiatric Association, and Dr. Knight herself admits that some verification of Brown's statements ought to have been done. In response, Plaintiff argues – unconvincingly – that verification was unnecessary because when Dr. Knight made the diagnosis, Dr. Knight could somehow look into the future and anticipate that Brown's later testimony would corroborate with what she told Dr. Knight. Plaintiff also contends that verification through medical and school records, or even interviews with Brown's family and friends, was unnecessary because Dr. Knight could tell that these sources of information were unavailable to her, even though Dr. Knight never requested any records or interviews.

Second, and equally problematic, Dr. Knight offered a causation opinion without demonstrating that she accounted for likely alternative explanations for Brown's alleged symptoms. Perhaps recognizing Dr. Knight's shortcomings in this regard, Plaintiff attempts to shift the burden onto Defendants to disprove Dr. Knight's conclusion. The burden, however, remains on Plaintiff to prove her expert's testimony is reliable under *Daubert* and Rule 702. As

Plaintiff has failed to do so, and instead relies on Dr. Knight's apparent supernatural abilities to meet the reliability standard, Dr. Knight's testimony should be excluded.

## ARGUMENT

### I. PLAINTIFF BEARS THE BURDEN OF ESTABLISHING THAT DR. KNIGHT'S TESTIMONY IS ADMISSIBLE

As an initial matter, in an attempt to deflect the focus away from Dr. Knight's insufficiencies, Plaintiff tries to shift the burden to Defendants to disprove Dr. Knight's admissibility. *See* Memorandum of Law in Opposition to Defendants' Motion to Exclude Dr. Marcia Knight ("Pl. Opp.") at 2 (contending that Defendants "have not produced any evidence or expert testimony of their own" that challenges Dr. Knight's reliability). Courts have made it clear, however, that as "the proponent of expert testimony," the Plaintiff in this case, not the Defendants, "has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 593 n.10).

In particular, Plaintiff suggests that Defendants' arguments should carry less weight because Defendants have not paid to hire a rebuttal expert. (Pl. Opp. at 2, 14-15, 19) The Second Circuit has already rejected this same argument. *See Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000) (rejecting the contention that "the party challenging the admissibility of its opponent's expert witness [must] first use its own expert to call the challenged expert's testimony sufficiently into question") (internal quotation marks and citation omitted). As demonstrated below and in Defendants' initial motion, it does not take an expert to see that Plaintiff has failed to meet her burden of establishing Dr. Knight's admissibility.

## II. DR. KNIGHT'S DIAGNOSIS OF PTSD IS NOT RELIABLE BECAUSE SHE FAILED TO VERIFY BROWN'S SELF-REPORTED SYMPTOMS

Plaintiff does not dispute that Dr. Knight relied solely on facts supplied by Plaintiff without verifying the accuracy of the information in any way, even though case law makes clear that Dr. Knight had an obligation to do something – anything – to verify Brown's self-serving statements. *See, e.g.*, *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272 (RPP), 2003 U.S. Dist. LEXIS 15976, at *11 (S.D.N.Y. Sept. 15, 2003) ("[A]ny expert should be aware that a party and counsel in a litigation have an interest in the outcome and that an expert study should not be dependent on the information they supply."); *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95-cv-8136 (RCC), 2001 U.S. Dist. LEXIS 20737, at *12 (S.D.N.Y. Dec. 13, 2001) (dismissing as unreasonable "assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation"); *Kador v. City of New Rds.*, No. 07-682, 2011 U.S. Dist. LEXIS 118110, at *4 (M.D. La. Oct. 13, 2011) (finding expert's diagnoses of PTSD "not reliable, nor admissible because of the lack of testing and independent verification of plaintiff's symptoms"); *Gastineau v. UMLIC VP LLC*, No. 04-cv-0633 (LJM) (WTL), 2008 U.S. Dist. LEXIS 47173, at *10-11 (S.D. Ind. June 17, 2008) (excluding expert's testimony where expert "testified that she based her diagnosis of [plaintiff's] PTSD on his own self-reported medical history"); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 520 (E.D. La. 2002) (excluding proposed expert's diagnosis of PTSD where the expert acknowledged that he relied merely on "the accuracy and completeness of his patient's self-reported history").

Instead, Plaintiff offers two specious and illogical excuses for Dr. Knight's failure to verify Brown's self-serving and uncorroborated statements. First, Plaintiff contends that Dr. Knight had no reason to question her veracity since "the account of what happened to [Brown] on August 6, 2010 that she told Dr. Knight was entirely consistent in its essential facts with what

[Brown] testified to in the depositions." (Pl. Opp. at 10)  This argument assumes that at the time Dr. Knight wrote her report, she was aware of what Brown "subsequently testified about . . . in her deposition and 50-H hearing." (Pl. Opp. at 10)  However, when Dr. Knight drafted her expert report, Brown had not yet testified.  Bloor Decl., Ex. A[1] (Deposition of Marcia Knight, June 13, 2012, ("Knight Dep.") at 58:8-10).  Dr. Knight's expert report is dated nearly two months *before* Brown's 50-H hearing and nearly fifteen months *before* Brown's subsequent deposition testimony.  *See* Bloor Decl., Ex. B (Psychological Report of Shadeesha Brown by Marcia Knight, dated Oct. 12, 2010, (the "Report") at 1).  Thus, Dr. Knight could not have known at the time she offered her diagnoses of Brown that Brown's "account of what happened . . . was entirely consistent" with deposition testimony that had yet to take place.

Moreover, contrary to Brown's claim that what "she told Dr. Knight was entirely consistent" with her subsequent testimony, the record reveals Brown has told wildly divergent accounts of the August 2010 incident.  There are numerous material factual discrepancies between the story that Brown told Dr. Knight and Brown's subsequent testimony under oath.  For example, Brown told Dr. Knight that "a *female* officer arrived who allowed [her] to put on her clothing." (Report at 2) (emphasis supplied).  In contrast, Brown later testified that it was a "male" detective that let her get dressed and "it was only male cops there."  Bloor Decl., Ex. C (50-H Hearing of Shadeesha Brown, Dec. 7, 2010, ("Brown 50-H Dep.") at 47:11-17).

Brown also offered inconsistent stories regarding whether a gun was pointed at her;[2] whether there was anyone else, other than officers, in the bedroom where she alleges she

---

[1] References to "Bloor Decl." are to the declaration of Martin S. Bloor, dated April 17, 2013, and submitted in support of Defendants' Reply in Support of Their Motion to Exclude the Testimony of Dr. Marcia Knight.
[2] Brown testified that a gun was pointed at her; Dr. Knight testified that Brown never told her this.  *See* (Brown 50-h Dep. at 25:15-24); Bloor Decl., Ex. D (Deposition of Shadeesha Brown, Jan. 5, 2012 ("Brown Dep.") at 31:15-19); (Knight Dep. at 112:8-10)

-4-

was detained;[3] her employment history;[4] the number of times that Brown and Dr. Knight met;[5] and even whether Dr. Knight performed any tests during their meetings.[6]  Thus, Brown's story was not merely unverified, it was also ever-changing and Dr. Knight's testimony and opinions based on that ever-changing story should therefore be excluded.  *See Lee Valley Tools, Ltd. v. Indus. Blade Co.*, No. 10-cv-6242 (CJS), 2013 U.S. Dist. LEXIS 12178, at *38 (W.D.N.Y. Jan. 29, 2013) ("[E]xpert opinion should be excluded when the data relied upon is neither verified as to its accuracy and completeness or . . . is speculative in nature and therefore inherently insufficient.") (internal quotation marks and citation omitted).

        Second, and equally unavailing, Brown contends that Dr. Knight did not need to verify Brown's statements because "the simple fact was that there were no other records or reports that were available to her." (Pl. Opp. at 10)  It is unclear how Plaintiff can conclude that Dr. Knight did not have access to any other records when it is uncontested that Dr. Knight never requested any.  (Knight Dep. at 68:22-24)  Dr. Knight never requested to interview any of Brown's friends, co-workers, or relatives even though she instructs other psychologists to do so. (Knight Dep. at 68:22-24; 118-127)  Dr. Knight never requested or reviewed any of Brown's school records, including any attendance or disciplinary records, even though she advises others conducting psychological reports to review such records. (Knight Dep. at 35:10-12); Bloor Decl.,

---

[3] Brown testified that she did not see the female owner and occupant of the apartment until they were taken out of the apartment; Dr. Knight wrote in her report that the female owner of the apartment was brought into the room with Brown.  *See* (Brown 50-h Dep. at 26:15-17); (Report at 2)

[4] Brown testified that she previously worked as a model and in sales at a boutique flower shop; Dr. Knight testified that Brown never told her this, even though Dr. Knight specifically asked about her work history.  *See* (Brown 50-h Dep. at 8:15-21; 58:7-22); (Brown Dep. 53:20-24; 13: 24-25; 14: 1-4); (Knight Dep. 54:5-20; 56:20-22)

[5] Brown testified that she was seen by Dr. Knight "five or six" times; Dr. Knight testified that they only met twice prior to Dr. Knight's report and three times total. *See* (Brown 50-h Dep. at 53:20-22); (Knight Dep. at 51:8-18; 116:7)

[6] Brown testified that Dr. Knight did not give her any tests; Dr. Knight testified that she administered a series of tests on Brown.  (Brown 50-h Dep. at 53:23-24); (Brown Dep. at 18:4-5); (Knight Dep. 71:1-16)

Ex. E at 188.[7]  Dr. Knight never requested or reviewed any of Brown's medical records, including those related to previous traumatic events, such as Brown's miscarriage.  (Knight Dep. 122:24-25; 123:1-11)  As Dr. Knight failed to verify Brown's self-serving statements in any way, particularly in light of Brown's financial motivation to falsify or exaggerate her symptoms,[8] her diagnosis is unreliable and her testimony should be excluded.[9]

### III.  THE CAUSATION OPINIONS ARE UNRELIABLE BECAUSE DR. KNIGHT DID NOT FULFILL HER DUTY TO ACCOUNT FOR LIKELY ALTERNATIVE EXPLANATIONS FOR BROWN'S ALLEGED INJURIES

Dr. Knight bears the burden of demonstrating that she considered alternative explanations in forming her expert opinion regarding the nature and cause of Brown's alleged injuries.  See *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d 213, 238 (S.D.N.Y. 2004) ("An expert must demonstrate that he has adequately accounted for obvious alternative explanations in order for his testimony to be reliable."); *Zwillinger v. Garfield Slope Housing*, No. 94-cv-4099 (SMG), 1998 U.S. Dist. LEXIS 21107, at *58 (E.D.N.Y. Aug. 17, 1998) (noting that "[t]o establish specific causation, other possible causes for the symptoms experienced by plaintiff should be excluded"); *Bowers v. NCAA*, 564 F. Supp. 2d 322, 354 (D.N.J. 2008)

---

[7] Curiously, Plaintiff speculates that "there surely were no school records describing her functioning following the trauma to review." (Pl. Opp. at 11)  Yet, attendance records could verify whether Brown was "socially withdrawn" and had "significant problems with . . . avoidance" as she reported to Dr. Knight; her school disciplinary records during this time and interviews with her teachers could corroborate that "she was restless," had "generalized feelings of mistrust toward others," or was "anxious" and "jumpy" as she claimed.  (Report at 7)

[8] The American Psychiatric Association expressly advises that to properly diagnose PTSD, practitioners should rule out intentional production of false or exaggerated psychological symptoms, *i.e.* malingering, "in those situations in which financial remuneration, benefit eligibility, and forensic determinations play a role."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 467 (4th ed. 2000).

[9] Plaintiff complains that Defendants "impose an inflexible checklist" that Dr. Knight was required to undertake.  (Response at 9)  To the contrary, in this particular case, Dr. Knight could have sought corroborating information from a number of sources that would have fulfilled her duty to do so, either through interviews of family or friends, or through a review of medical or educational records.  Among the various options available to her, Dr. Knight chose to do nothing other than rely on Brown's self-serving information.

Moreover, to the extent Dr. Knight's report relies on the Minnesota Multiphasic Personality Inventory (MMPI), it too should be precluded.  Dr. Knight admitted that her report analyzes the test results of the "MMPI-2RF" which is intended for adults, while the test actually administered to Brown was one meant for adolescents, the MMPI-A.  (Knight Dep. at 71:12-16)  The MMPI-A is nowhere mentioned in the expert report.

(finding proposed expert's testimony inadmissible under Rule 702 where the psychiatrist failed to account for alternative causes, other than defendant's conduct, for plaintiff's injury).

Here, Defendants highlighted three likely alternative causes for Brown's symptoms that Dr. Knight did not exclude – nor apparently even consider – in her expert report: (1) Brown's miscarriage at age 15 or 16, which Dr. Knight admitted was a "traumatic event";[10] (2) a possible history of physical and sexual abuse, which Dr. Knight admitted could impact Brown's mental state;[11] and (3) Brown's abandonment by her father at a young age, which Dr. Knight also admitted could have impacted Brown's mental state.[12] *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987) (finding that a doctor's "failure to take into account this family history seriously weakens this source as a foundation for [the expert's] opinion").

In response to these critical deficiencies in Dr. Knight's analysis that render her testimony unreliable, Plaintiff responds with a conclusory sentence that Dr. Knight "testified in her subsequent deposition, that she had considered whether the prior miscarriage could have caused Plaintiff's post-incident PTSD and depression, and had ruled it out as an etiological factor." (Pl. Opp. at 17) Not surprisingly, Plaintiff does not provide the Court any citation to Dr. Knight's testimony that supports this contention. In fact, Dr. Knight's deposition testimony paints an entirely different picture. *See* (Knight Dep. at 123:3-11) (testifying that it was possible that Brown acted differently after the traumatic event of having a miscarriage, but that she could not say for sure because she never asked).

Plaintiff also quotes the following conclusory statement from Dr. Knight's report: "There is no evidence that Shadeesha had any of the difficulties enumerated above prior to the

---

[10] (Knight Dep. at 123:7-11; 130:8-25; 131:1-4)

[11] (Knight Dep. at 130:11-25) (stating she never asked Brown about prior physical or sexual abuse and that she had "no idea" whether such abuse had occurred); *Id.* at 134:14-23 (acknowledging that such abuse could have impact)

[12] (Knight Dep. at 123:21; 134:14-25; 135:1-10)

incident with the police on 8/6/2010." (Pl. Opp. at 17) However, Dr. Knight admitted that she asked only "general questions" regarding Brown's symptoms prior to August 6, 2010, compared to the specific and detailed questions she posed to Brown about symptoms after that date. (Knight Dep. at 125:5-16; 123:7-11) ("Q. Would you say it's possible that [Brown] might have had symptoms of PTSD after her miscarriage? A. I have no idea. Q. Did you ask? A. No."). As Plaintiff has failed to satisfy her burden of demonstrating that Dr. Knight considered and ruled out alternative explanations in her expert opinion, this Court should exclude her testimony.

### IV. PLAINTIFF RELIES ON INAPPOSITE AND NON-BINDING CASES

Plaintiff does not cite a single case from this Circuit that holds an expert's opinion is reliable when the opinion is based on uncorroborated information by a party and where the expert does not account for likely alternative explanations. Rather, Plaintiff relies predominantly on *Lopez v. City of Houston*, an unreported opinion from the District Court for the Southern District of Texas. In *Lopez*, police detained and arrested more than 300 people in raids connected to suspected street racing; sixty-two of the individuals brought suit and the plaintiffs' experts diagnosed forty-eight of them with PTSD. *Lopez v. City of Houston*, No. 03-cv-2297, 2006 U.S. Dist. LEXIS 38856, at *8, 13 (S.D. Tex. June 12, 2006). Defendants moved to exclude the proposed experts' conclusions on the grounds that they lack reliability and that the methodologies were faulty. *Id*. at *18-19. The court denied the defendants' challenges and found the proposed experts' testimony satisfied the *Daubert* standard. *Id*. at *40.

*Lopez* is distinguishable in two key ways. First, the experts in *Lopez* relied not merely on the plaintiffs' self-reported information, but instead they interviewed the plaintiffs' family members and friend to ensure their diagnoses of PTSD were accurate. *Id*. at *38. Here, Dr. Knight failed to verify Brown's story through any interviews with anyone other than Brown, even though Dr. Knight advises others conducting psychological examination to interview

friends and family.  (Knight Dep. at 35:20-22; 37:5-24)  Second, the party challenging the experts in *Lopez* provided "no evidence whatsoever that the [factual] summary" that the experts' relied upon was "inaccurate or unreliable" in any way, nor was there any "evidence that any Plaintiff misrepresented . . . the events in issue." *Id*. at *31, 38.  Here, in contrast, Defendants have demonstrated that Brown's story to Dr. Knight – which provided the basis of Dr. Knight's expert opinion – was materially and repeatedly inconsistent when compared with Brown's later testimony.  *See* Section II, *supra*; *see also Lopez*, 2006 U.S. Dist. LEXIS 38856, at *17 (noting that "[c]ourts must consider . . . the accuracy of the data relied upon by the expert").

Plaintiff's reliance on *Lopez* is not merely misplaced, but it advances Defendants' argument that Dr. Knight's diagnoses is unreliable because she failed to verify Brown's self-serving information and because she failed to substantively inquire into whether Brown's miscarriage is the cause of the PTSD diagnosis.  *See Lopez*, 2006 U.S. Dist. LEXIS 38856, at *26 n.13 ("There appears to be no dispute in the field of psychology that a qualified diagnostician must interview the subject to . . . inquire into the events that may have precipitated the current symptoms.").

Similarly, Plaintiff cites *Trafton v. Sunbury Primary Care, P.A.*, 689 F. Supp. 2d 198, 201 (D. Me. 2010), in which the proposed experts based their psychological diagnoses not merely on what the plaintiff told them in conversation, but also on the plaintiff's "medical records" that indicated sexual assault, a previous diagnosis of PTSD.  In addition, the experts conducted a review of the "details of her psychiatric history." *Id*.  As indicated above, Dr. Knight did not request or review any of Brown's medical records or psychiatric records, even though she instructs other psychologists to do so.  *See* Section II, *supra*.  Neither this case, nor

the other non-binding cases that Plaintiff cites, excuses the unreliability inherent in Dr. Knight's opinions.[13]

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted and Dr. Knight's proposed testimony should be excluded.

Dated: April 17, 2013
New York, New York

Respectfully submitted,

/s/ Martin S. Bloor
Lawrence Byrne
Martin S. Bloor
Linda Regis-Hallinan
Chris Howard
Pepper Hamilton LLP
620 Eighth Avenue
New York, NY 10018-1405
212.808.2700 (Tel)
212.808.2738 (Fax)

*Attorneys for Defendants*

---

[13] As to other cases that Plaintiff cites, but does not discuss, these too can be easily dismissed. In *Schaefer-Condulmari v. US Airways Group*, LLC, No. 09-cv-1146, 2012 U.S. Dist. LEXIS 99666, at *15 (E.D. Pa. July 17, 2012), the defendant "relie[d] upon medical practice guidelines, rather than . . . case law to argue that failure to . . . rule out other possible causes of the diagnosis render [the expert']s opinion unreliable." *Id*. at *15. In contrast, Defendants here cited a number of binding cases that make it clear that Dr. Knight had a duty to consider and rule out alternative explanations relating to the nature and cause of Brown's alleged injuries. *See* Section III, *supra*.

Lastly, in *Redmond v. City of E. Point*, No. 00-cv-2492 (WEJ), 2004 U.S. Dist. LEXIS 31631 (N.D. Ga. Mar. 26, 2004), the court was persuaded that inconsistencies between the plaintiff's deposition testimony and what plaintiff told the expert were "a result of the disorganization caused by the PTSD from which she is suffering." *Id*. at *20. In contrast, here, Plaintiffs do not provide any explanation for the variance in stories that Brown provided Dr. Knight and that which she provided in her deposition testimony. The following excerpt from *Redmond*, however, is applicable here: "where a defendant points to a plausible alternative cause and the doctor offers no explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable." *Id*. at *28 (quoting *Kudabeck v. Kroger Co.*, 338 F.3d 856, 862 (8th Cir. 2003)).