UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

SHADEESHA BROWN, et al.,                           :
                                                   :
                        Plaintiffs,                :
                                                   :
            -v-                                    :
                                                   :
THE CITY OF NEW YORK, et al.,                      :
                                                   :
                        Defendants.                :

------------------------------------------------------------------ X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: FEB 2 7 2014

11 Civ. 1068 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Plaintiff Shadeesha Brown's motion for an order striking the taxation

of daily trial transcripts from the Clerk's assessment of costs in favor of Defendants.  Dkt. No.

113.  For the following reasons, Plaintiff's motion is granted.

## I.    BACKGROUND

The Court assumes familiarity with the facts of this case from its summary judgment

opinion, *see Brown v. City of New York*, No. 11 Civ. 1068 (AJN), 2013 WL 491926 (S.D.N.Y.

Feb. 8, 2013); Dkt. No. 52, and will discuss here only those facts relevant to the disposition of

Plaintiff's motion.

On February 16, 2011, Plaintiff and her co-plaintiff, Gabriel Perez, brought this action

alleging violations of 42 U.S.C. § 1983 and various state law torts.  Dkt. No. 1.  On July 5, 2012,

Defendants moved for summary judgment, which was granted on all claims except for Plaintiff's

§ 1983 claim alleging unlawful detention in the nude and her tort claim for intentional infliction

of emotional distress.  *See Brown*, 2013 WL 491926, at *8, *10.  The jury trial on Plaintiff's

remaining claims—in which Plaintiff testified for less than a day—ran from May 28 to May 30,

1

2013. Pl. Br. 1. Defendants had four attorneys present in the courtroom. Bellin Decl. ¶ 4. The jury reached a verdict for Defendants, and judgment was entered in their favor on June 13, 2013. Dkt. No. 110.

Under Local Rule 54.1(a), a party seeking costs must, within 30 days of judgment, "file with the Clerk a notice of taxation of costs indicating the date and time of taxation . . . [that] shall be served upon each other party." On July 10, 2013, Defendants filed a motion seeking to have costs assessed against Plaintiff and setting July 31 at 10:30 AM as the date and time of taxation. Pl. Ex. 2. Plaintiff filed an opposition to Defendants' application on July 26 in writing, pursuant to Local Rule 54.1(b). Pl. Ex. 3. When filing his papers, Plaintiff's counsel asked the Clerk's office whether the Clerk or, instead, the undersigned would resolve Defendants' motion. He claims he was told—incorrectly, as it turned out—that "the matter would be submitted to the assigned judge." Bellin Reply Decl. ¶ 4. For that reason, Plaintiff's counsel states, he did not appear before the Clerk on July 31 to contest Defendants' application. *Id.*

The Clerk issued a bill of costs on July 31, which awarded Defendants a total of $5,628.21, including $3,725.16 for daily trial transcripts. Dkt. No. 112. Because Plaintiff's counsel mistakenly believed that the Court would issue a written opinion after the bill of costs was docketed, he did not file the instant motion until August 14, i.e., fourteen days after the Clerk issued the bill of costs. Dkt. No. 113; Bellin Reply Decl. ¶ 4.

## II. DISCUSSION

Under the Federal Rules, costs other than attorney's fees "should be allowed to the prevailing party," and "[t]he clerk may tax costs on 14 days' notice." Fed. R. Civ. P. 54(d)(1). The question of what items may be taxed as costs is governed by 28 U.S.C. § 1920 and, in this

2

District, by Local Rule 54.1(c). Once the Clerk has issued a bill of costs, the district court may review the Clerk's decision on motion served within seven days. Fed. R. Civ. P. 54(d)(1).

### A. The Court Excuses Plaintiff's Untimeliness

As noted above, Plaintiff's appeal of the Clerk's taxation of costs was filed more than seven days after the bill of costs was issued, and is therefore untimely. But as with most deadlines in the Federal Rules, "the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In determining whether a party's neglect is excusable, courts consider: "[1][t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (alterations in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (internal quotation marks omitted). Excusable neglect is "an elastic concept," which is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 392, 395) (internal quotation marks omitted).

Defendants argue that, because Plaintiff's motion made "no attempt to offer an explanation for the delay," the Court should deny it without reaching the merits. Def. Opp. 2. But Plaintiff does offer an explanation for the delay—described above—in her reply brief. *See* Pl. Reply 1–2. Considering this explanation in light of the relevant factors, the Court concludes that Plaintiff's untimeliness was the result of excusable neglect.

First, it is difficult for the Court to see how Defendants would be prejudiced by Plaintiff's delay, as even they appear to concede. *See* Def. Opp. 2 (citing case in which motion was denied

3

as untimely even though "there would be no prejudice nor any other impact on the proceedings"

(quoting *Morisseau v. DLA Piper*, 255 F.R.D. 127, 129 (S.D.N.Y. 2008))).  Second, the length of

the delay—seven days—was not significant.  *Cf. Morisseau*, 255 F.R.D. at 129 (ignoring lack of

prejudice where plaintiff's counsel, a "former Harvard Law Review editor," offered no reason

for delay of "eight to nine months" and had missed other deadlines throughout litigation).  *But cf.*

*Mancini v. CSX Transp., Inc.*, No. 08 Civ. 933, 2011 WL 1705537, at *4 & n.5 (N.D.N.Y. May

4, 2011) (denying motion filed one day late as untimely where movant "offered no explanation

why its motion was untimely").  And there is no reason to believe that Plaintiff's counsel did not

act in good faith, since he timely filed appropriate objections to Defendants' initial application.

The adequacy of Plaintiff's explanation is slightly more complex.  "[T]here is a clear line

of authority in this Circuit that the failure to follow clear rules does not constitute excusable

neglect," *Morisseau*, 255 F.R.D. at 129, but it is questionable how clear the rules actually are,

given Plaintiff's counsel's communications with the Clerk's office.  Rule 54(d)(1) states that the

"clerk may tax costs" and that the Court "may review the clerk's action," and Local Rule 54.1(a)

states that a motion for taxation of costs must be "file[d] with the Clerk."  Therefore, read

together, the rules certainly suggest—strongly—that costs are taxed by the Clerk in the first

instance, subject to the Court's review.  But neither one clearly states that the Clerk *always*

makes the initial decision, opening the door to Plaintiff's misperception (which the Court

assumes resulted from a miscommunication).  If the Court were indeed making the decision

itself, a written opinion might well be expected given the nature of the motion and Plaintiff's

opposition, and in any event, there would be little reason for Plaintiff to think that a "motion"

must be "served within . . . 7 days" if the Court were already acting on the issue.  Fed. R. Civ. P.

54(d)(1).

4

Plaintiff's failure to appear before the Clerk on July 31, which likely compounded her initial error, is equally understandable. Local Rule 54.1(b)—which also applies to the Eastern District—provides that "[i]n the Eastern District, the parties need not appear at the date and time scheduled for taxation," but does not clarify that an appearance is *always* required in the Southern District. Again, on the (mistaken) assumption that the Court was addressing the costs issue, it is easy to see how Plaintiff neglected the possibility of a required appearance before the *Clerk*. Accordingly, where there is no prejudice, a short delay, and no reason to disbelieve Plaintiff's explanation, the Court is satisfied that the "excusable neglect" standard has been met. *See In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 135 (2d Cir. 1998) ("Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness. Hence, it clearly is broad enough to encompass even those omissions caused by circumstances within the movant's control." (citations omitted)). The Court will therefore review Plaintiff's motion on its merits.

### B. The Daily Transcripts Were Not "Necessarily Obtained"

On the merits of an appeal from the taxation of costs, a district court must "exercis[e] its own discretion to decide the cost question itself." *Sung Choi v. City of New York*, No. 10 Civ. 6617 (JPO), 2013 WL 1387021, at *2 (S.D.N.Y. Apr. 5, 2013) (quoting *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001)) (internal quotation mark omitted). "[T]he burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified." *Id.* (alteration in original) (quoting *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225, 227 (E.D.N.Y. 2012)) (internal quotation marks omitted).

Trial transcripts are taxable as costs if they were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *see also* Loc. Civ. R. 54.1(c)(1). However, "[c]onvenience of

5

counsel is not sufficient" to show that a transcript was necessarily obtained. Loc. Civ. R. 54.1(c)(1); *see also Sung Choi*, 2013 WL 1387021, at *2 ("[D]aily transcripts of trial testimony are not customary." (alteration in original) (quoting *Carmody v. Pronav Ship Mgmt.*, No. 02 Civ. 7158 (DF), 2004 WL 1837786, at *2 (S.D.N.Y. Aug. 17, 2004)) (internal quotation mark omitted). Rather, the determination of whether daily transcripts were necessarily obtained is a "case-by-case, fact-sensitive inquiry." *Bartels v. Incorp. Village of Lloyd Harbor*, No. 08 Civ. 1256 (AKT), 2012 WL 181633, at *2 (E.D.N.Y. Jan. 6, 2012).

Defendants argue that daily trial transcripts were "necessary" for two purposes: (1) to prepare for Plaintiff's cross examination and for closing arguments; and (2) to resolve evidentiary disputes between the parties. Def. Opp. 2. Plaintiff counters that Defendants' use of daily transcripts for these purposes was "a mere convenience and did not render the transcripts 'necessarily obtained.'"[1] Pl. Reply 4 (citations omitted). The Court will consider Defendants' stated uses for the transcripts in turn.

1. Trial Preparation

First, Defendants argue that the trial transcripts were necessary to prepare for Plaintiff's cross examination and closing arguments. Def. Opp. 4. However, the mere "[u]se of the transcripts during trial . . . does not mean they were 'necessarily obtained.'" *John G. v. Bd. of Educ.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1995) (citing *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973)); *see also Sims v. City of New York*, No. 08 Civ. 5965 (JGK), 2011 WL 4801363, at *2 (S.D.N.Y. Oct. 11, 2011) (trial transcripts used to "prepare for cross examination, summation and the jury charge" were not necessarily obtained).

---

[1] Plaintiff also points out that, even if the transcripts of her own testimony were necessary, the Clerk taxed costs for "transcripts of all [other] proceedings during the trial . . . none of which would be necessary or even relevant." Pl. Reply 3. For the reasons explained in the text, the Court need not reach this argument.

Defendants assert that "Plaintiff's credibility was crucial to this case," and notes that several district courts in this Circuit have characterized transcripts as "necessary" based in part on the finding that a witness's credibility was "crucial." Def. Opp. 4. However, all but one of those cases[2] involved lengthy trials with complex factual issues. *See Bartels*, 2012 WL 181633, at *3 (plaintiff's testimony "covered most of the first three days of the trial" and "involved at least seven separate incidents spanning approximately three years"); *Perks v. Town of Huntington*, No. 99 Civ. 4811 (JS), 2008 WL 8091034, at *3–4 (E.D.N.Y. Mar. 31, 2008) (trial "spann[ed] four weeks," plaintiff's direct case was "confusing and muddled," and "the transcripts were absolutely necessary in clarifying Plaintiff's claims so that the jury charge and verdict sheet could be drafted"); *Cohen v. Stephen Wise Free Synagogue*, No. 95 Civ. 1659 (PKL), 1999 WL 672903, at *2 (S.D.N.Y. Aug. 27, 1999) (trial lasted for three weeks, and plaintiff testified for three days).

Indeed, "[c]ourts have routinely found that the cost of transcripts is not taxable where the trial was 'neither long nor complicated' and the party seeking costs had two or more attorneys" capable of taking notes during the proceedings. *Harris v. Brown*, No. 08 Civ. 1703 (MKB), 2013 WL 632247, at *2 (E.D.N.Y. Feb. 20, 2013) (quoting *Williams v. Colatosi*, No. 97 Civ. 417 (RCC), 2001 WL 913922, at *3 (S.D.N.Y. Aug. 13, 2001)); *see also Sung Choi*, 2013 WL 1387021, at *2 ("[N]umerous courts in this District have denied costs for daily transcripts of trial testimony after trials that were short or not particularly complex."). In this case, the trial lasted for three days, which other courts have agreed is a short period of time. *See Williams v. Cablevision Sys. Corp.*, No. 98 Civ. 7988 (RPP), 2000 WL 620215, at *1–2 (S.D.N.Y. May 12,

---

[2] In the fourth case, the court actually denied the only disputed request for transcript costs; unlike here, the plaintiff conceded that a transcript of her own testimony was taxable. *Harris v. Brown*, No. 08 Civ. 1703 (MKB), 2013 WL 632247, at *2 (E.D.N.Y. Feb. 20, 2013).

2000) (denying costs for daily transcripts because three-day trial was "short"); *Walther v. Maricopa Int'l Inv. Corp.*, No. 97 Civ. 4816 (HB), 1999 WL 816176 (S.D.N.Y. Oct. 13, 1999) (same); *see also Scott v. WPIX, Inc.*, No. 10 Civ. 4622 (WHP), 2012 WL 6168620, at *1 (S.D.N.Y. Dec. 11, 2012) (denying costs for daily transcripts because nine-day trial was "relatively short").

Additionally, Defendants had four attorneys present during the trial who were capable of taking notes.  Pl. Br. at 3–4; *see Karmel v. City of New York*, No. 00 Civ. 9063 (KMK), 2008 WL 216929, at *3 (S.D.N.Y. Jan. 9, 2008) ("Defendants had at least two attorneys present at all times during the trial, one of whom could have been taking sufficient enough notes during the proceedings to make daily trial transcripts unnecessary."); *Bucalo v. E. Hampton Union Free Sch. Dist.*, 238 F.R.D. 126, 129 (E.D.N.Y. 2006) ("[I]t is not necessary for counsel to rely on a trial transcript when counsel can take notes during trial in order to prepare for cross examination and summation.").

Finally, the Court agrees with Plaintiff that the trial did not involve particularly "complex issues."  Pl. Reply 5.  As a result, Defendants' interest in preparing for Plaintiff's cross-examination and for summation did not render the daily transcripts "necessary" in this case.

### 2. Evidentiary Disputes

Defendants also argue that the daily trial transcripts were "necessary to resolve various evidentiary disputes and were used significantly by Plaintiff and the Court" during the course of the trial.  Def. Opp. 5.  Plaintiff argues that the transcripts were not necessary to resolve these disputes because "the court could have had the testimony read back by the court reporter."  Pl. Reply 4.  The Court agrees with Plaintiff.

Defendants cite only three instances in which the transcripts were referenced by the Court or the parties. First, the Court stated that in order to resolve a dispute involving Plaintiff's Facebook account,[3] "we're all going to look at the transcript." Def. Opp. 5–6 (quoting Tr. 162:19–22). However, the Court actually resolved the dispute without referring to the transcript at all, by allowing defense counsel to question Plaintiff regarding her account. Tr. 165:2–17; 170:2–174:1. Accordingly, the transcripts were not, as Defendants claim, necessary for the Court to resolve the dispute.

Second, defense counsel sought to resolve a dispute regarding "whether the officer handcuffed [Plaintiff], the officer that initially pulled the sheet off of her." Tr. 175:25–176:3. To do so, defense counsel began to refer to Plaintiff's deposition testimony. Tr. 177:1–2. The Court interrupted to ask whether Defendants would be ordering daily transcripts, and counsel responded affirmatively. Tr. 177:5–7. Only then did the Court ask counsel to refer to the transcripts, rather than the deposition testimony. Tr. 177:8–10. Cf. Bucalo, 238 F.R.D. at 129 ("The Court did not order the Defendant to purchase the trial transcript. In fact, . . . the Court only inquired whether the Defendant planned to purchase the transcript and stated that it was beneficial to possess the transcript."). Because Plaintiff's deposition testimony was also available for impeachment, and because in any event her testimony could have been read back by the court reporter, reliance on the trial transcript was a matter of convenience.

Third, Defendants assert that, during their Rule 50 motion, the Court "instructed" Plaintiff's counsel to point out a portion of Plaintiff's testimony "in the transcript." Def. Opp. 6.

---

[3] Plaintiff and Plaintiff's psychiatrist had testified that Plaintiff was concerned about her modesty after Plaintiff was allegedly detained in the nude by Defendants. Defense counsel sought to impeach Plaintiff by showing that a particular photo, in which Plaintiff was dressed in revealing clothing, had been posted to Plaintiff's Facebook profile (and was therefore viewable by a significant number of people) in 2011, after the alleged detention.

But that is inaccurate. The Court asked Plaintiff's counsel whether he had a copy of the transcript. Def. Opp. 7 (quoting Tr. 365:9). Plaintiff's counsel responded that he did not, and—before the Court could respond—defense counsel interjected that he had a copy. *Id.* (quoting Tr. 365:10–11). Again, reliance on the transcript was a convenience; without it, Plaintiff's testimony could have been read back by the court reporter. *See Morales v. Smith*, Nos. 94 Civ. 4865 (JSR), 94 Civ. 8773 (JSR), 1998 WL 352595, at *2 (S.D.N.Y. June 26, 1998) ("Although the Court was able to utilize the transcripts in deciding defendants' Rule 50 motion . . . this was simply a convenience, and, in its absence, particular portions of the testimony could have readily been read back by the court reporter . . . ."); *Malloy v. City of New York*, No. 98 Civ. 5823 (JG), 2000 WL 863464, at *1 (E.D.N.Y. June 23, 2000) ("My use of the trial transcript was occasioned [by] its ready availability. Without it, I would have been more than adequately served by a read-back of the testimony by the court reporter.").

Thus, in each instance, the Court and parties either did not rely on the transcripts or did so only as a matter of convenience, given that the transcripts were already available on defense counsel's initiative. In no case did the Court actually require daily transcripts to be ordered for use at trial. As a result, the daily transcripts were not "necessarily obtained."

## III.    CONCLUSION

For the foregoing reasons, the daily trial transcripts in this case were not "necessarily obtained" and should not have been included in the Clerk's bill of costs.  The previously taxed costs of $5,628.21 are reduced by $3,725.16, for a total of $1,903.05.

SO ORDERED.

Dated: February 26, 2014
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

11